IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Michael Stewart,

      Plaintiff,

      v.                                    Case No. 2:14-cv-600

Everyware Global, Inc.,
et al.,

      Defendants.

<u>OPINION AND ORDER</u>

This is an action brought by plaintiff Michael Stewart against his former employers, Everyware Global, Inc., a Delaware corporation with its corporate headquarters in Lancaster, Ohio, and Anchor Hocking, LLC, a subsidiary of Everyware having its principal place of business in Lancaster, Ohio. The action was originally filed in the Court of Common Pleas of Fairfield County, Ohio, on April 7, 2014. Defendants filed a notice of removal on June 20, 2014, on the ground of federal question jurisdiction.

In his complaint, plaintiff alleges that he was employed by defendants as the IT Infrastructure and Operations Manager for Anchor Hocking. Complaint, ¶ 6. Plaintiff alleges that in November, 2013, defendants' general counsel discovered discrepancies in Everyware's financial disclosures, and told management that she would report this information to the Securities and Exchange Commission unless the issues were not corrected within ninety days. Complaint, ¶ 11-12. General counsel was terminated by the defendants. Complaint, ¶ 14. Thereafter, Associate General Counsel Erica Schoenberger approached plaintiff about participating in an internal investigation into the matter. Complaint, ¶15. Plaintiff stated that he was not comfortable with retrieving communications

for an investigation that involved upper level management and plaintiff's supervisors. Complaint, ¶¶ 16-17. As a result of plaintiff's concerns, an outside firm was retained to retrieve information from cell phones and other equipment, and plaintiff's role was confined to working with the outside firm in retrieving company emails. Complaint, ¶¶ 18-19. Plaintiff alleges that as part of his job responsibilities, he was required to submit weekly updates regarding his tasks, including his work on the investigation, to Chief Financial Officer Bernard Peters, who was one of the individuals implicated in the matter of inaccurate financial disclosures. Complaint, ¶¶ 23-27.

Plaintiff further alleges that after submitting these weekly reports to Peters, plaintiff began experiencing retaliation, including the cancellation of a vacation day, the rescheduling of weekly meetings to times when plaintiff would be unable to attend, and the inclusion of his name on a list of individuals targeted for termination. Complaint, ¶¶31-34. On January 21, 2014, plaintiff was terminated, reportedly due to a reduction in force and the elimination of his job. Complaint, ¶¶ 39-40. Plaintiff's position was then held, in sequence, by three younger and less experienced individuals. Complaint, §§42-47.

In his complaint, plaintiff advances the following claims: (1) retaliation in violation of the Sarbanes-Oxley Act of 2002 ("SOX"), 18 U.S.C. §1514A; (2) wrongful termination in violation of public policy under Ohio law; (3) age discrimination in violation of Ohio Rev. Code Chapter 4112; and (4) promissory estoppel under Ohio law. This matter is before the court on the defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the wrongful termination and

2

promissory estoppel claims for failure to state a claim for which relief may be granted.

I. Rule 12(b)(6) Standards

In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded allegations in the complaint as true, and determine whether plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 519 (6th Cir. 2008); Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005). To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. Id.

While the complaint need not contain detailed factual allegations, the "[f]actual allegations must be enough to raise the claimed right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must create a reasonable expectation that discovery will reveal evidence to support the claim. Campbell v. PMI Food Equipment Group, Inc., 509 F.3d 776, 780 (6th Cir. 2007). A complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft

3

v. Iqbal, 556 U.S. 662, 678 (2009). Where the facts pleaded do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief as required under Fed.R.Civ.P. 8(a)(2). Id.

Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; see also Ashcroft, 556 U.S. at 679 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Association of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007).

II. Wrongful Termination Claim

Defendants move to dismiss plaintiff's claim for wrongful termination in violation of public policy, arguing that the remedies afforded plaintiff under SOX are adequate to address the public policy embodied in that statute.

The common-law doctrine of employment at will, under which an employee or an employer may legally terminate the employment relationship at any time and for any reason, generally governs employment relationships in Ohio. Mers v. Dispatch Printing co., 19 Ohio St.3d 100, 103, 483 N.E.2d 150 (1985). However, Ohio recognizes a public policy exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute. See Greeley v. Miami Valley Maintenance Contrs., Inc, 49 Ohio St.3d 228, Syll. Para. 1, 551 N.E.2d 981 (1990). The elements for the tort of wrongful discharge in violation of public policy are: (1) that a clear public policy existed and was manifested in a state or federal constitution,

4

statute or administrative regulation, or in the common law; (2) that dismissing employees under circumstances like those involved in plaintiff's dismissal would jeopardize the public policy; (3) that plaintiff's dismissal was motivated by conduct related to the public policy; and (4) that the employer lacked an overriding legitimate business justification for the dismissal. <u>Leininger v. Pioneer National Latex</u>, 115 Ohio St.3d 311, 313, 875 N.E.2d 36 (2007). The first and second elements are questions of law to be determined by the court. <u>Id.</u>

In addressing the second element (the so-called "jeopardy" element), the Ohio Supreme Court has declined to recognize a common-law claim for wrongful termination in cases where plaintiff is provided with sufficiently broad and inclusive remedies by the statute expressing the public policy. <u>See Wiles v. Medina Auto Parts</u>, 96 Ohio St.3d 240, 244, 773 N.E.2d 526 (2002)(noting that there is "no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests"). In such a case, public policy is not jeopardized by the absence of a common-law action in tort "because an aggrieved employee has an alternate means of vindicating his or her statutory rights ... thereby discouraging an employer from engaging in the unlawful conduct." <u>Id.</u> In <u>Wiles</u>, the plaintiff relied on the Family Medical Leave Act ("FMLA") as the source of public policy supporting his wrongful discharge claim. The Ohio Supreme Court noted that even though the FMLA might not provide all of the remedies, such as punitive damages or compensation for emotional distress, which might be recovered under common law, "the absence of those items of recovery does not render

the statutory remedies inadequate" and there was "no need to create by judicial fiat further remedies by way of a <u>Greeley</u> claim when the FMLA provides reasonably satisfactory ones." <u>Id.</u> at 247-248.

Similarly, in <u>Leininger</u>, 115 Ohio St.3d at 319, the Ohio Supreme Court held that the jeopardy element was not satisfied where Ohio Rev. Code Chapter 4112 adequately protected the state's policy against age discrimination in employment through the remedies it offers to aggrieved employees. The court concluded that "it is unnecessary to recognize a common-law claim when remedy provisions are an essential part of the statutes upon which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct." <u>Id.</u> at 317.

In this case, the public policy relied upon by plaintiff is contained in SOX, as codified in 18 U.S.C. §1514A. That statute provides whistleblower protection for employees of publicly traded companies by creating a civil action for retaliation. Section 1514A(a) provides in relevant part that no publicly traded company

> may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee—
>
> (1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by—

* * *

6

        (C) a person with supervisory authority over the employee
        (or such other person working for the employer who has
        the authority to investigate, discover, or terminate
        misconduct)[.]

18 U.S.C. §1514A(a).  Under 18 U.S.C. §1514A(b), an employee who
alleges discharge or any discrimination in violation of subsection
(a) may file a civil action in a United States district court and
shall be entitled to a jury trial.  18 U.S.C. §1514A(b)(1)(B) and
(2)(E).  A prevailing employee is entitled to "all relief necessary
to make the employee whole."  18 U.S.C. §1514A(c)(1).  Available
compensatory damages include reinstatement with the same seniority
status that the employee would have had but for the discrimination,
back pay with interest, and "compensation for any special damages
sustained as a result of the discrimination, including litigation
costs, expert witness fees, and reasonable attorney fees."   18
U.S.C. §1514A(c)(2)(A)-(C).

     In Mann v. Fifth Third Bank, Nos. 1:09-cv-14, 1:09-cv-476
(unreported), 2011 WL 1575537 (S.D.Ohio 2011), another judge of this
court addressed the issue of whether a plaintiff asserting a SOX
claim could also bring a claim for wrongful discharge in violation
of public policy under Ohio law.   The plaintiff bank employee
alleged that he was discriminated against for reporting alleged
improper practices regarding inadequate staffing, loan closings,
appraisals and other practices allegedly related to fraud against
the bank's shareholders to his superiors.  2011 WL 1575537 at *9.
The court concluded that because the Ohio public policy of
preventing fraudulent or poor lending practices injurious to
shareholders was fully vindicated by SOX's "full panoply of remedies
if someone is fired for reporting such violations[,]" that policy

7

would not be jeopardized if plaintiff could not sue in tort for wrongful discharge. Id. at *12. The court then held that plaintiff had failed to establish the jeopardy element of his wrongful discharge claim. Id.

Other courts have reached the same conclusion. In Taylor v. Fannie Mae, ___ F.Supp.2d ___, 2014 WL 4219553 at *4 (D.D.C. August 25, 2014), the court applied the law of the District of Columbia (that there is no need to create a new exception to the at-will employment doctrine where there is already a statutory framework in place), and held that SOX provided a suitable remedy for plaintiff's termination. The district court in Hein v. AT & T Operations, Inc., No. 09-cv-00291-WYD-CVS (unreported), 2010 WL 5313526 at *5-6 (D. Colo. Dec. 17, 2010) considered Colorado law, which provided that a public policy exception to the at-will doctrine is not available when the statute relied upon for the policy provides a remedy for retaliatory discharge, and dismissed plaintiff's wrongful discharge claim because SOX provided its own remedy for retaliatory discharge. In Day v. Staples, Inc., 555 F.3d 42 (1st Cir. 2009), the court declined to recognize a claim for wrongful termination under Massachusetts common law in light of plaintiff's SOX claim, noting:

> In passing SOX, Congress aimed to create comprehensive legislation to fill the gaps in a patchwork of state laws governing corporate fraud and protections for whistleblowers. It would be entirely inappropriate for plaintiff to be able to use a federal statute designed to address the inadequacies of state law to create a new common law cause of action under Massachusetts law.

555 F.3d at 59-60.

This court concludes that SOX provides sufficiently broad and inclusive remedies which adequately protect the public policy embodied in that statute, and that it would not be appropriate to

recognize a common-law action in tort. Even if it later develops that SOX does not provide for punitive damages or other remedies which might be available at common law, the make-whole remedies provided under SOX are "reasonably satisfactory ones." Wiles, 96 Ohio St.3d at 248.

Plaintiff argues that he has pleaded his SOX and wrongful discharge claims as alternative theories of recovery, and that he should therefore be entitled to proceed on his wrongful discharge claim in case he does not prevail on his SOX claim. While a litigant is entitled to plead claims in the alternative, see Fed. R. Civ. P. 8(d)(2) and (3), this rule does not insulate claims which are insufficient from dismissal under Rule 12(b)(6). Under the Ohio law discussed in Leininger, plaintiff's wrongful termination claim would not be recognized as a viable exception to the termination-at-will doctrine. Because SOX provides adequate remedies to protect the public policy advanced by that statute, plaintiff cannot prove the jeopardy element of his wrongful termination claim as a matter of law.

In addition, the Ohio Supreme Court has held that where the plaintiff failed to prevail under Ohio Revised Code §4113.52, the Ohio whistleblower statute, the plaintiff also had no foundation for a Greeley claim for wrongful termination. Contreras v. Ferro Corp., 73 Ohio St.3d 244, 251, 652 N.E.2d 940 (1995); see also Kulch v. Structural Fibers, Inc., 78 Ohio St.3d 134, 677 N.E.2d 308, 323 (1997)("The obvious implication of Contreras is that an employee who fails to strictly comply with the requirements of R.C. 4113.52 cannot base a Greeley claim solely upon the public policy embodied in that statute."). In light of Contreras, the Sixth Circuit has

held that "where the sole source of the asserted public policy is a whistleblower statute, state or federal, an employee must comply strictly with the dictates of the statute." See Hill v. Mr. Money Finance Co. and First Citizens Banc Corp., 309 F.App'x 950, 964 (6th Cir. 2009)(noting that if plaintiff's claims under the federal whistleblower statutes fail, then his public policy claims for wrongful termination based on those statutes must also fail). Because SOX is a federal whistleblower statute and the sole source of policy identified in plaintiff's memorandum contra the motion to dismiss, if plaintiff fails to prevail on his SOX claim, he will lose the basis for his wrongful termination claim as well.

Plaintiff also relies on Sutton v. Tomco Machining, Inc, 129 Ohio St.3d 153, 950 N.E.2d 938 (2011), for the proposition that even if he does not win on his SOX claim, he should still be able to proceed on his wrongful termination claim. However, Sutton is distinguishable. In that case, the plaintiff was terminated after being injured but before filing a workers' compensation claim. The Ohio retaliation statute governing the filing of workers' compensation claims only prohibited retaliatory acts against an employee after he had filed a claim. The Ohio Supreme Court found that the General Assembly did not intend to leave this gap in protection for employees who had not yet filed claims, and that §4123.90 expressed a clear public policy prohibiting retaliatory employment action against injured employees, even those who had not yet filed a workers' compensation claim. Id. at 160. The court also concluded that because the statute's remedies were not available to workers such as plaintiff who suffered retaliation before filing a claim, plaintiff could pursue a common law cause of

action for wrongful discharge. <u>Id.</u> at 161. In this case, plaintiff does not identify a gap in SOX's coverage which would preclude him from seeking the remedies available under §1514A.

Because SOX provides an adequate remedy, plaintiff has not shown that he can establish the jeopardy element of the Ohio common-law claim for wrongful termination in violation of public policy, and plaintiff's claim for wrongful termination fails to state a claim for relief.

### III. Promissory Estoppel Claim

Defendants argue that plaintiff has failed to plead sufficient facts to state a claim for promissory estoppel. The elements of a promissory estoppel claim under Ohio law are: (1) a clear, unambiguous promise: (2) reliance upon the promise by a person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of the reliance on the promise. <u>Weiper v. W.A. Hill & Associates</u>, 104 Ohio App.3d 250, 260, 661 N.E.2d 796 (1995).

In the employment context, a promise of future employment benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the doctrine of employment at will. <u>Wing v. Anchor Media, Ltd. of Texas</u>, 59 Ohio St.3d 108, 110-11, 570 N.E.2d 1095 (1991); <u>Lawson v. AK Steel Corp.</u>, 121 Ohio App.3d 251, 256, 699 N.E.2d 951 (1997). In <u>Welch v. Finlay Fine Jewelry Corp.</u>, No. 01 AP-508 (unreported Tenth Dist.), 2002 WL 206047 at *3 (Ohio App. Feb. 12, 2002), the court upheld the trial court's dismissal of plaintiff's promissory estoppel claim where plaintiff's complaint failed to allege "either a promise of continued employment or state any facts from which it

11

could be inferred that such a promise was made."

In addition, any alleged employment agreement is at will and terminable by either party where it fails to specify a certain term or duration. Henkel v. Educational Research Council of Am., 45 Ohio St.2d 249, Syll., 344 N.E.2d 118 (1976); Nealon v. City of Cleveland, 140 Ohio App.3d 101, 109, 746 N.E.2d 694 (2000). In Rhodes v. R & L Carriers, Inc., 491 F.App'x 579 (6th Cir. 2012), the Sixth Circuit upheld the district court's dismissal of plaintiff's promissory estoppel claim. The court noted that under Ohio law, "the promise at a minimum not only must be sufficiently clear and unambiguous, but also must promise 'continued employment for a specific period.'" Id. at 585 (quoting Steele v. Mara Ents., Inc., No. 09AP-102 (unreported Tenth Dist.), 2009 WL 3494847 at *3 (Ohio App. Oct. 29, 2009)). An employer's promise of continued employment until some unspecified date, such as death or retirement, does not satisfy this requirement. Id.

The plaintiff must point to specific promises, and cannot rely on nebulous representations by the employer. Penwell v. Amherst Hospital, 84 Ohio App.3d 16, 20, 616 N.E.2d 254 (1992). Absent evidence of a specific promise of continued employment, the employee's subjective understanding is insufficient as a matter of law to create an inference of continued employment upon which to base the promissory estoppel exception to the employment-at-will doctrine. Weiper, 104 Ohio App.3d at 261; see also Nuovo v. The Ohio State University, 726 F.Supp.2d 829, 842 (S.D.Ohio 2010)(complaint's vague and general allegations essentially reflecting plaintiff's subjective conclusions were insufficient to present a clear and unambiguous promise by the employer that

12

plaintiff's reports of alleged misdiagnoses would not subject him to retaliation, where plaintiff did not indicate what promise led to these subjective conclusions).

In the instant case, plaintiff makes the general, conclusory allegation that there was "a clear and unambiguous promise to Plaintiff that Defendants would neutrally apply its policies and procedures, making employment decisions." Complaint, ¶ 72. Plaintiff also alleges that there was a "clear and unambiguous promise to Plaintiff that his cooperation and participation in the internal investigation would not harm his employment with Defendants." Plaintiff further alleges that he "did, in fact, cooperate and participate in the internal investigation, following all directives that were given to him." Complaint, ¶ 74. However, the complaint fails to describe the wording of the allegedly "clear and unambiguous" promises, or to identify when and by whom the promises were made. The complaint does not state what the defendants' "policies and procedures" were, or where they were recorded, or whether they were ever specifically referred to by defendants or disclosed to plaintiff as part of a promise. What amounts to plaintiff's subjective belief that his job would be secure if he followed all directions from his supervisors is not sufficient to support a promissory estoppel claim. See Welch, 2002 WL 206047 at *3 ("Plaintiff's subjective belief that if she obeyed her supervisor's order she would be ensured continued employment cannot be a substitute for allegations of a specific promise of continued employment by the employer.") There are also no allegations in the complaint that plaintiff was promised continued employment for a specific period.

13

In response to defendants' motion to dismiss, plaintiff notes the allegations in the complaint indicating that he expressed his discomfort to Schoenberger about participating in the investigation by retrieving the communications of upper level management and his supervisors.  Plaintiff further notes that the complaint alleges that, as a result of plaintiff's concerns, an outside firm was hired to retrieve information from cell phones and other equipment for chain of custody purposes, and plaintiff's role in the investigation was limited to retrieving company emails and working with the outside firm.  Complaint, ¶¶ 15-19.  Plaintiff argues that this factual information is sufficient to allege that he was promised that his role in the investigation would not impact his employment. However, no reference is made in those paragraphs to any specific promise which was made to plaintiff concerning job security. Plaintiff's subjective understanding based on these circumstances that the safety of his job was guaranteed is insufficient to demonstrate a promise of continued employment upon which to base the promissory estoppel exception to the employment-at-will doctrine. See Weiper, 104 Ohio App.3d at 261.

As stated earlier, to survive a motion to dismiss, the "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Mezibov, 411 F.3d at 716. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 679.  The complaint fails to allege sufficient facts to show that a clear, specific and unambiguous promise of continued employment was made to plaintiff by defendants, an essential element of the

promissory estoppel claim.  Plaintiff's promissory estoppel claim
fails to state a claim for which relief may be granted.

IV. Conclusion

    In accordance with the foregoing, defendants' amended partial
motion to dismiss (Doc. 10) is granted.  Defendant's original
partial motion to dismiss (Doc. 5), which was docketed before the
filing of the amended complaint, is moot.  Plaintiff's claims of
wrongful discharge in violation of public policy (Second Claim for
Relief) and promissory estoppel (Fourth Claim for Relief) are
dismissed.


Date: November 10, 2014              s/James L. Graham
                              James L. Graham
                              United States District Judge

15